Case numbers 13-1840 and 13-1896, Janyce Tilmon Jones v. Armen Boladian et al. Arguments not to exceed 10 minutes per side. And Mr. Bush, for the appellant, cross out the way. You may proceed. Mr. Bush. Good morning, Your Honors. My name is Richard Bush, and I represent Bridgeport Music and the related entities. The primary issue in this appeal is whether the district court abused its discretion when it only awarded Bridgeport approximately one-eighth of its fees and costs incurred in this action, conclusively saying that that amount was sufficient to deter the attorney's wrongdoing, without any analysis of how it arrived at that figure, despite also finding that, one, the accusations in both motions for fraud on the court did not have a basis in fact. Number two, the information complained about not being supplied by Bridgeport, allegedly, before the settlement arose, had been in fact supplied in an August 14th email to counsel, that Mr. Tanish and Mr. Reed both knew that this information was supplied at minimum. Those are all, pardon me, counsel, those are all bases for sanctions, right, that you're listing now, but he granted sanctions, so the issue is just how much, from your perspective. Correct. So under this court's precedent... When you say there's enough to deter, isn't that kind of a subjective determination? It is not, Your Honor. Under this court's precedent, in Haydick's v. Johnson, in Rent's v. Dynasty, the court held that the district court must set forth its reasoning if it's going to reduce fees, and in Rent specifically, the court found that without... Were those Rule 27 sanctions, or were those fee-shifting statutes? Those were sanctions under Rule 11 and also under Section 1927 for the multiplying of the proceedings. What was going on in Haydick's? Well, in Haydick's v. Johnson, Your Honor, the court specifically said that without any specific analysis... What were the attorney's fees for in that case? I believe it was for the Rule 11 in 1927, Your Honor. For what? For multiplying the proceedings and for filing a frivolous action. The court specifically has held in Rent's and in Haydick's, and also, Your Honor, in Gardner and Ritter, when the filing of the action itself under Rule 11 in 1927 is in fact frivolous and found to be frivolous, the court is correct in awarding full sanctions. It doesn't mean it must, though, right? It does not, but it has to set forth its reasoning, and that's the problem. What case says that? That's the Rent's v. Dynasty case. That's what you were just referring to. Yes, and Haydick's v. Johnson as well. But this is particularly appropriate here, where the court reduced the fees by one-eighth, and yet the attorneys who were involved have been sanctioned by this court and throughout the country in numerous cases. This court itself, Your Honor, has sanctioned Mr. Reed in Holmes v. Artist Rights and the Pharmacy Records case, both cited by us for filing frivolous actions. And he has been sanctioned at least seven or eight other times by courts throughout the country for engaging in specifically the wrongdoing that he's engaged in in this case. In fact, in the Jenke v. Batista's case, 259 FRD 373, Northern District of Indiana, 2009, the court specifically said that Mr. Reed's practice involved he flaunts his misconduct throughout the country, that he constantly re-argues terminated claims in all these different cases where he's been sanctioned, and he uses redundant claims as leverage and harassment as opposed to overzealous advocacy. This is a pattern of conduct by these attorneys. Mr. Reed, seven or eight different times throughout the country has been sanctioned. We cited these cases to the district court. The district court did not address those. The district court did not comment on that. Mr. Tenish, who's also been held liable jointly and separately with Mr. Reed, has been sanctioned by this court in Bridgeport v. Smith. He's sanctioned the other case I'll be arguing today. And in fact, in another case that we cited where his client filed seven pro se actions in Tennessee and was sanctioned, the court specifically believed that counsel had been ghostwriting the papers. So in this case, Your Honor, this court very clearly said... In rents it was de minimis amounts. Is that right? The point, Your Honor, in rents it was de minimis amounts. But again, what this court said in rents was this. It has not been explained how awarding the amount that was awarded in rents would be sufficient to deter these attorneys or others from engaging in similar misconduct. Likewise here... That would be sort of facially true in the case of de minimis amounts, wouldn't it? Well, $20,000 when the attorneys have cost my clients to incur nearly $380,000 in both cases, $20,000 per case, one case was... You're talking about both cases at the same time now? Yes. Well, I'm just talking about the first case. But in this case that we're discussing here, it was $150,000 in fees. The court awarded $20,000. $150,000 is going to deter people from filing something that could be answered as easily as these... These were not easily answered, Your Honor. Why not? Well, we had to engage in... In this case we had to go through two or three different rounds of briefing. We had to incur $150,000 in fees. But as you pointed out, you basically said the same thing, right? The court specifically held... The same point is made each time. I mean, they file something, there's an easy answer to it, you make the easy answer. Does it really take $150,000 to do that? The court specifically held that our attorney's fees were reasonable. That doesn't answer my question. Absolutely it did in this case. Maybe it was reasonable in this case, but in terms of a typical case, isn't $20,000 going to be enough to answer something like that? Absolutely not, Your Honor. You need to explain to me why not. Because $20,000 is not a lot of money. For practicing attorneys, when they're trying to... For example, in this case, Your Honor, as the district court recognized, the lawyers specifically contacted me and said that they demanded, in order not to file an affidavit that the court found was irrelevant... Are you talking about this case or the other case? This case. The affidavit was filed in both cases. And I received a phone call from counsel saying that if we did not pay him $1 million in 48 hours... My understanding, this was part of the analysis of the other case. It was filed in both cases, Your Honor. It was filed in both cases. It wasn't relied upon by the district court in this case. I'm not sure it wasn't relied upon by the district court in this case. The court specifically said that the Pederer affidavit that was filed was irrelevant and did not have a basis in fact. What the court said in the other case was that as part of granting sanctions, that that was improper and inappropriate, and they continued to rely on that Pederer affidavit. But the point is that in both cases, counsel for Mr. Tenish and Mr. Reed, Mr. Reed contacted me specifically and said, you don't pay us $1 million in 48 hours, we're filing this Pederer affidavit. The Pederer affidavit, as the court found, was irrelevant and had no basis in fact. These lawyers have been sanctioned around the country. Do you rely on that in your brief in this case? Do we rely on the Pederer affidavit? We certainly do rely on the Pederer affidavit. Is it a $1 million threat and all that? Yes, Your Honor. Where is that? I don't have the brief specifically. The brief is back there. I'm sure we cited the Pederer affidavit and we cited the court's opinion. Go ahead. And the point is this. Under rents and haydix, this court, the district court, has to set forth why the $20,000 would be sufficient to deter. When we cite it to the district court. I guess I just have a little trouble knowing what he's supposed to say. You're asking him to say some words. He says it's a judgment of the district court who's familiar with the litigation, how much is going to deter this kind of activity. You say this is enough to deter it. It's internally inconsistent. It's not like there has to be some specific amount that will stop a lawyer from doing something. Your Honor, it's specific. The case law in this court says you have to set forth your reasoning. It is inconsistent to say on the one hand, I find that the filing of these motions were frivolous and you are entitled to your reasonable attorney's fees. Those were findings on the one hand. On the other hand, then to say submit your affidavits, your billing records, the fees that you incurred are reasonable. So you're entitled to your reasonable fees. Your fees are reasonable. The reason there has to be an explanation is because he said originally you're going to get fees. He can't reconsider that? He didn't say he was reconsidering it. He said we are. This is enough. Your Honor. He did say this is enough, right? He said it's enough for deterrence. But without any reasoning, without any analysis whatsoever. I mean, what would you envision him saying in support of the deterrence conclusion? He should analyze why when these lawyers have been sanctioned around the country in multiple cases and why they have done it for years and years. You pointed out the prior pattern to Judge O'Meara? Absolutely we did. And for these lawyers who have engaged in this wrongdoing for many years, Mr. Reed specifically, and has been cited by this court multiple times, sanctioned by this court multiple times, Mr. Tenish has been sanctioned by this court in Bridgeport for years. I don't think you need to convince us that more might have been appropriate. More might have been appropriate for all these reasons you give. But we have a pretty deferential scope of review. You shake your head, but we do. It's pretty deferential, right? It's abuse of discretion. This court in Rents addressed a specific issue. In Rents, there was no deterrent effect from de minimis amount. Well, it was $2,000 or $3,000, $20,000 in this day and age. It's not much more than $2,000 or $3,000. But the principle is— The judge didn't think $20,000 was de minimis. The principle is that the district court has to articulate its reasoning. And when it found that these cases were frivolous, when he found that we were entitled to our reasonable fees, when he asked us to submit our billing records, when he then concluded that our records showed reasonable fees that were incurred, to then turn around and just say, okay, $20,000 is enough to deter when these lawyers have used the courts of this country as their own personal playground. What if he said what you just said for the last 90 seconds, and then said, and therefore $20,000? Would that have been all right? It would not have been all right. We would have been right. Because it still would have been an abuse of discretion. It is this panel's job to determine whether, under the circumstances, $20,000 is reasonable. Well, I mean, you couched that in terms of sort of a de novo determination, but that's not what we're doing. We're just deferentially looking at whether the district court had some reasonable basis to think $20,000, $40,000, frankly, was enough. $40,000 on $350,000, or approximately $1,000. I understand your frustration. I mean, I do. But you're swimming against a hard current here. I'm not sure why I'm swimming against a hard current when the president of this court, in rents and in haydix, sets forth what the district court has to do, and the district court didn't do it here. You have two arguments. One is it's not enough even if you explain it, and the other is you didn't explain it. Judge Kethledge is asking you, assuming it was explained, why isn't it enough? And you say, well, because he didn't explain it. That's not what I'm saying. That doesn't really answer the question. What I'm saying is this court has held, in at least two different cases, where a district court has found that the action was frivolous from inception. Total fees and costs should be awarded. I cited those cases to your honor. I mentioned them a moment ago. Here, the district court found that. Upheld total fees or where we raised them from? Upheld the awarding of total fees and costs. Upholding, right? Upholding is real different from reversing under an abusive discretion scope of review, right? Fair enough, it's different. But the point here is that he did not analyze anything, any of the facts in order to reach any conclusion. And had he done so, if this court were to do that, if this court were to review the facts that we've set forth, that these lawyers have been sanctioned throughout the country, that these lawyers continue to do what they've done here, that these lawyers used stale claims in order to coerce a settlement of a million dollars or more that was undeserved, that these lawyers, in this case, as remarked by the Janke Court, engage in this type of conduct as a mode of doing business, then how in the world can $20,000, when you force someone to go through years of litigation and incur hundreds of thousands of legal fees, be a deterrent? I don't see how that's even possible to reasonably conclude that. Okay. Thank you, Counsel. Counsel says you got off easy. I wish it were so, Your Honor. I only wish it were so, and let me emphasize first that $20,000 times two in both cases is not only a significant deterrent, it's a shameful and serious blight. I have been sanctioned, regardless of the amount. That's the stigma that I will carry. That's the stigma that I appreciate the fact that I could come and speak to the panel this morning because I accept the responsibility of my actions. I don't accept the responsibility of my co-counsel, Mr. Reed. He did actions on his own. But this was the case that I laid out, that I pursued, and I stand before this panel humbled, chastened, and fully recognizing the results of my own conduct in this action. I want to speak to... What's your appeal, then? The appeal is two parts. First, to respond to these issues. Just as we've heard in arguments about the seriousness of the allegations, the points that were made, all of those points were made before Judge O'Meara in the district court. The district court was in full command of the facts. He was fully engaged in the process. I will go a step further, even though opposing counsel doesn't mention it. In one of the opinions that Judge O'Meara issued, he said that I, Jeffrey Thanish, personally, was harassing Bridgeport. I accept that, what it was. And we have not appealed the fact of the sanction. But that same district court judge, based upon all the submissions that, in this case, the Bridgeport parties and their attorneys put in, affidavits, all of the arguments we've heard, all of the other issues of Mr. Reed's sanctions and various other courts where he has been an attorney, where I have not been an attorney with him, all of that was before Judge O'Meara. What Judge O'Meara did was he exercised the wide discretion that this court gives to these issues of sanctions. And that's in the Run Fellow. So you're not appealing the sanctions. I'm going to talk about the cross. I want to come across very contrite and humble, because that's where I am. And I will talk about, very briefly at the end of my arguments, the issues of the cross appeal. But the objective of both Rule 11 and Section 1927 is to provide deterrence for future conduct, not to compensate or make the other party whole. I apologize for this situation. I am responsible for it. But deterrence has been achieved. A sanction has been awarded, a substantial amount of sanction. In addition to the $20,000 in this first case and the $20,000 in the second case, I personally was also sanctioned under 1927 an additional amount of $5,000, which was paid to the court. If we assume for the moment that it was properly sanctionable activity, why in terms of rough justice should they pay three-quarters of the cost of that? Because the issue with deterrence has been achieved. And you also see that they are not stopping their pursuit to be made whole. As I put in the briefing, there's a motion or a request for judicial notice. The same parties, Mr. Bush as the attorney, have sued me and the Oakland County Circuit Court for abuse of discretion and malicious prosecution relating to these very actions. You're not going to go into that court and say that they lose in that case because they already litigated it in this case. I do believe that there may be issues of double recovery in that case, but that's for a different day and a different court. If they want to seek compensation to be made whole, those are claims that they can pursue in state court. But what we're here today is that we have a Rule 11 sanction, we have a Section 1927 sanction that are set forth in the briefing. These are not fee-shifting statutes. By arguing that this is purely a deterrence sanction and not a compensatory sanction, that makes it hard for you to say when you go into this other court that these issues have been litigated and they can't get the other 80%, because it's a different issue. I don't want you speaking out of both sides of your mouth. Well, I don't feel as though I'm speaking out of both sides of my mouth. I know you're not now. I just want to make sure you're not then. I think that those are tort claims that were brought against me under Michigan law. There's going to be law to follow that. From the research that I have done, I do believe that these are separate issues. All I'm saying is that what you're arguing for is an affirmance of the amount, and the basis for your argument is not that it fully compensates them. No, and I wouldn't argue that it fully compensates them, but I am saying that in Judge O'Meara's order, Judge O'Meara issued an order using his discretion, just like he exercised his discretion to issue the sanction in the first instance. It's the May 29, 2013 order. It's in the record at 138, and it specifically says, the plaintiffs put in all their evidence, all their claims for their fees, and the judge said, quote, it exceeds what the court believes is necessary to deter future sanctionable conduct by plaintiff's counsel. Yeah, and I have it in front of me. Let me just ask you a couple of foundational questions about all this. It seems that the court is not distinguishing at all between you and Mr. Reed for purposes of this sanction. I gather that Mr. Reed is the lawyer who had been sanctioned in these prior cases that opposing counsel is referring to. Is that correct? That's correct. The specific background is that I've actually, Attorney Gregory Reed is an attorney in Michigan who has a practice of representing a number of musical artists and songwriters who may have claims against their various record labels, including Bridgeport, including Motown Records. I actually had cases against Mr. Reed, and it was through that relationship that his client was Mrs. Tillman. I was introduced to Mrs. Tillman. But this is my case. The pleadings that were sanctioned on were not filed by Mr. Reed. The research wasn't done by Mr. Reed. It was done by me. Are you talking about both cases that were subject to the $20,000 reward? They're both yours? And I take full responsibility. I guess what I'm driving at is— Does it have anything to do with those other cases? This Jenke case? Absolutely not. And I have not been sanctioned across the country. The only times I have ever been sanctioned, and the shame and stigma that comes with that, regardless of the price you want to put on it, if $20,000 is de minimis in the minds of some people, it's not de minimis to me. The sanction and the stigma is exponentially higher than that. But no, I was not part of any of these cases with Attorney Reed in any other parts of the country. I have been sanctioned by Judge O'Meara in both of the cases that we're going to hear now. And I was sanctioned by—well, I was awarded— Mr. Bush got a fee award in a previous appeal with Bridgeport before the Sixth Circuit under a ruling that I had filed the frivolous appeal. Let me ask you this question. What I'm driving at is whom are we trying to deter here? All right, let me just get the full thing out. So you guys are co-counsel. He's been sanctioned in a lot of different places. You've been sanctioned here. You appear to be genuinely contrite about that. He's not here, I guess, or he's not at the table. Even if we accept the district court's conclusion that this might be enough to sanction you, the order doesn't distinguish between the two of you. And Mr. Reed was counsel as well in this case. How do we know that it's enough to deter him? Well, the award, I believe, was against both the plaintiff, Mrs. Tillman, and her counsel. I know that with respect to the 1927 sanction, that was solely directed towards me. I can't speak for myself, and I can— I mean, it just says counsel, plaintiff's counsel, right? Correct. So how do we read that to mean only you? That we only need to be worried about deterring you as opposed to somebody— Well, to the extent, as I think opposing counsels were to say in his argument that Mr. Reed and I are a tag team, I can certainly say that we are both sufficiently deterred from any of this. I don't know. He's not here, and apparently he's a recidivist in this regard, just based on the number of sanctions. So how—I mean, what—how do we conclude that Mr. Reed is going to be deterred by all this, by 20 grand? I cannot—I mean, to be an all-counter, I cannot speak for Attorney Reed that's here. I can tell you from working with both him and the party in this case that we are all collectively sufficiently deterred. And that—and, in fact, deterrence has been— If this were a criminal case, Mr. Reed would have a significant criminal history, right, given his prior—given his prior sanctions? I think prior bad acts. So how do you get—how is it that if we are incorporating into the award the prior record of Mr. Reed that $20,000 is sufficient? Well, I think because all of these arguments were articulated, argued, and asserted with his equal passion and vigor that you heard this morning before Judge O'Mara. All of Mr. Reed's dirty laundry, so to speak, was placed before Judge O'Mara. Every—all the issues that we have here were before him, and I do believe that Judge O'Mara exercised his discretion. As I said, he had complete command of these facts. He was fully engaged in this process. Lastly, as I run out of time, I do wish to—and it's in the briefing as well— that both of the Hadex case and the Rents decisions are very distinguishable from the facts at hand here. Well, you'll have to let us look at those. I see your time is up.  Thank you very much, Your Honor. I have two minutes that I just want to run through a few things that were said. First of all, Mr. Tennis just said he wants to appear contrite. I think that was a quote that I wrote down when he said it. He can come before this panel and appear contrite and apologize. I went through years of litigation. The only reason why he's coming here wanting to appear contrite today is because he's been sanctioned now by this court, the Sixth Circuit, in one of the cases they fought for filing a frivolous appeal, because they've lost both cases and they were sanctioned, and because Ms. Tillman Jones went to Nashville and filed seven other cases making claims of fraud on the court. The court down there said that he believes that Mr. Tennis and Reid were ghostwriting the papers, and they sanctioned there as well. So you're disputing that Mr. Tennis has only been sanctioned in the two cases on appeal? No, no. He's been sanctioned on the two cases on appeal. He's also been sanctioned just recently by the Sixth Circuit Court of Appeals in Bridgeport v. Smith for filing a frivolous appeal over basically a dollar. Of course, Judge O'Meara didn't know that, right? He did not know about, I believe the Sixth Circuit decision post-dated the court's order in these two cases. So frankly, it's irrelevant. For purposes of deterrent, I'm not sure it is. How can we vacate or reverse Judge O'Meara based on something that happened afterwards? Well, what I'm saying to your honors is the issue is Judge O'Meara did not articulate any of the reasons that he found $20,000 was a deterrent, and this court says very clearly that you must. A couple other things that I want to say is on the malicious prosecution case that's been filed that's been raised, it wasn't enough for Mr. Tenish to file frivolous lawsuits after frivolous lawsuits. He, working with Ms. Petter who filed the affidavit, Ms. Petter absconded with all of my client's business records. Mr. Tenish became in possession of those documents. I hope you're not arguing the Michigan case. All I'm saying is there are different damages that are involved there. They went on television, they committed defamation. It's a completely different matter. Your honor, I would just say this. Your honors were not on the phone call that I received where Mr. Reed said that he was calling on behalf of himself and Mr. Tenish demanding a million dollars in 48 hours or they were going to file an irrelevant affidavit with all kinds of impertinent and scandalous accusations. I could envision him stroking a white kitten, may or may not have been wearing a monocle at the time, but I felt like I was in a bad movie. For years we've had a litigate against these people who have been sanctioned across the country and $20,000 just doesn't get it. They did not articulate why $20,000 would deter. Thank you for your position. Thank you, your honor. The case will be submitted. You can call the next case.